UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESSICA SHANNON,

    Plaintiff,

v.                                                                   Case No. 2:18-cv-407-FtM-CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Child's Insurance Benefits (CIB) and Supplemental Security Income (SSI) payments. For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1993, completed high school, and has no past relevant work experience. (R. 20, 23, 249). In May 2015, the Plaintiff applied for CIB and SSI, alleging disability as of December 1, 2011, due to disruptive behavior, mild retardation, attention deficit disorder, reactive attachment disorder, and post-

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

traumatic stress disorder (PTSD). (R. 116, 144). The Social Security Administration denied the Plaintiff's applications both initially and on reconsideration. (R. 144-233).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on June 12, 2017. (R. 12-48). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In a decision dated June 27, 2017, the ALJ found that the Plaintiff: (1) had neither attained the age of twenty-two[2] nor engaged in substantial gainful activity since her alleged onset date; (2) had the severe impairments of a learning disability, major depression, reactive attachment disorder, pervasive developmental disorder, schizotypal personality disorder, PTSD, mood disorder not otherwise specified, and attention-deficit hyperactivity disorder (ADHD); (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform the full range of work subject to certain non-exertional limitations; and (5) based upon the VE's testimony, was capable of performing jobs that exist in significant numbers in the national economy—namely, the representative occupations of cleaner, marking clerk, and advertising material distributor. (R. 237-57). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 250-51).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

---

[2] CIB has an age-related requirement. 42 U.S.C. § 402(d)(1)(A) & (B).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4).[4] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given her RFC, age, education, and work experience. *Carter*, 726 F. App'x at 739 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

---

[3] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether he applied the correct legal standards. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While the court accords deference to the Commissioner's factual findings, "no such deference is given to [his] legal

4

conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff claims on appeal that the ALJ did not properly evaluate the opinion of a licensed psychologist, Dr. Scott Hoch, who examined her in January 2014. (Doc. 21 at 21-31). The Commissioner counters that the ALJ's assessment of Dr. Hoch's opinion complies with the applicable regulations and is supported by substantial evidence. *Id.* at 31-38. Upon a thorough review of the record and the parties' submissions, the Court agrees with the Commissioner.

A.

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[5] "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*,

---

[5] Section 404.1527(b) and its SSI counterpart, 20 C.F.R. § 416.927, were amended effective March 27, 2017, and apply to applications filed on or after that date. 20 C.F.R. §§ 404.1520c, 416.902c. Because the Plaintiff's application was filed in May 2015, the older versions of the regulations apply here.

631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). If a doctor's statement rises to the level of a "medical opinion," an ALJ "must state with particularity" the weight given to that opinion "and the reasons therefor." *Id.* at 1179 (citation omitted). In rendering this determination, the ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and the explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 416.927(c). While the ALJ is required to consider each of these factors, she need not explicitly address them in her decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)). Typically, the ALJ must afford the testimony of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." *Crawford*, 363 F.3d at 1159 (internal quotation marks and citation omitted). The opinion of a one-time examining doctor, however, merits no such deference. *Id.* at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). Nevertheless, an examining doctor's opinion is usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*,

683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Besides the nature of a physician's relationship with a claimant, the weight of the evidence relied upon by the physician in developing his opinion is also relevant to the weight to be afforded that opinion. Thus, the more a medical source presents evidence to support his opinion, such as medical signs and laboratory findings, the more deference is given to that opinion. 20 C.F.R. § 416.927(c)(3). Similarly, the more consistent the medical opinion is with the record as a whole, the greater the weight to which it is entitled. 20 C.F.R. § 404.927(c)(4).

Ultimately, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Huntley*, 683 F. App'x at 832 (citing *Sryock,* 764 F.2d at 835).

B.

Here, Dr. Hoch conducted a one-time psychological evaluation of the Plaintiff in January 2014. (R. 475-83). He opined, in pertinent part, that the Plaintiff "would need an extremely supportive and nurturing work environment" and that "she would be unable to handle" the stress of even part-time work on a daily basis "unless she had a great deal of extra support on a daily basis." (R. 482). Dr. Hoch further offered that tolerating the stress of independent living and part-time work was "well beyond" the Plaintiff's ability despite the fact that her cognitive abilities scored within the lower portion of the average range. *Id.*

In her decision, the ALJ summarized Dr. Hoch's evaluation (R. 245) and gave it "little weight" (R. 247). In support of this assessment, the ALJ noted that, although Dr. Hoch was an examining source, his opinions were "extreme and not supported by medical evidence of record." (R. 247). The ALJ reasoned in this regard that the record established the Plaintiff was able to perform part-time work without any apparent additional support, was capable of engaging in activities of daily living with only limited assistance, and was stable when provided consistent mental health treatment. *Id.*

Notwithstanding the Plaintiff's claims to the contrary, the ALJ's assessment of Dr. Hoch's opinion complied with the applicable regulations. As evidenced by her decision, the ALJ recognized that, as an examining source, Dr. Hoch's opinions were generally entitled to more weight than those of a non-examining source under the Regulations. *Id.*; 20 C.F.R. § 416.927(c)(1). And, as the Regulations require, the ALJ also properly considered whether Dr. Hoch's opinions harmonized with the record as a whole. *Id.* § 416.927(c)(4). While it is true, as the Plaintiff points out, that the ALJ did not address each regulatory factor governing the evaluation of this opinion evidence (Doc. 21 at 25), the Eleventh Circuit has made clear that ALJs are under no obligation to do so. *Lawton*, 431 F. App'x at 833.

The ALJ's assessment of Dr. Hoch's opinions is likewise supported by the substantial evidence the ALJ cited in her decision. Beginning with the Plaintiff's work history, that evidence includes records of the Plaintiff's outpatient treatment with Sweetser Outpatient Services (Sweetser) from April 2012 to June 2014; a psychiatric

8

evaluation and progress notes from Woodfords Family Services (Woodfords) throughout 2014; and subsequent treatment records from SalusCare, Inc. (SalusCare). (R. 247).

According to these records, the Plaintiff completed cosmetology technician training and enjoyed working a seasonal job at a local department store in 2013, where she was able to stay focused and follow directions. (R. 491). She then obtained a job at Dairy Queen in Maine in April 2014, working six hours per day, three days per week. (R. 503, 589). Around the same time, the Plaintiff was also volunteering at a thrift shop on a weekly basis and taking driver's education courses. (R. 613).

With respect to the Dairy Queen position, the Plaintiff reported that, although she made mistakes at work that caused her to feel stressed, she nonetheless enjoyed the job. *Id*. The Plaintiff remained at Dairy Queen for several months and made no complaints about it to her social worker at Sweetser. (R. 501). Indeed, she told this treatment provider in June 2014 that she was doing well at Dairy Queen, was enjoying her co-workers, and was experiencing an improvement in her ADHD and PTSD symptoms. (R. 501).

The records also indicate that, in August 2014, the Plaintiff was laid-off from her job at Dairy Queen but procured a position at the Boys and Girls Club. (R. 606). The Plaintiff worked there four hours per day during the week, until moving to Florida in November 2014. (R. 600, 603, 626). She reported enjoying this work, as well. (R. 603).

9

The records additionally show that, during this period, the Plaintiff completed a life-skills assessment, in which she characterized herself as a competent employee. (R. 658). Her social worker at the time similarly opined in a comprehensive assessment that the Plaintiff seemed capable of mastering a skill when taught but seemed to lose interest in that skill once she acquired it. (R. 628).

According to the records, the Plaintiff then obtained a cashier position at Publix after moving to Florida, working approximately eight hours a week. (R. 676). She reported to her therapist in February 2015 that the job was "going well," *id.*, and the therapist assessed the Plaintiff as "clearly high functioning" (R. 669).

On appeal, the Plaintiff points to her struggles as a Publix cashier and suggests these problems caused her to be switched to a bagger position instead. (Doc. 21 at 27). While the Plaintiff testified at the hearing that she experienced trouble with the register, took extra breaks, and was counseled regarding the pace of her work, she also testified that she took these breaks because she did not feel like working, became a bagger because her supervisor observed her friendliness toward customers, and worked slowly at times due to physical—not mental—problems. (R. 25-26, 36-37).[6]

Moreover, as the records further demonstrate, the Plaintiff held her Publix job for at least a year or two (R. 42), choosing to leave for reasons unrelated to her mental

---

[6] Similarly, the records evidence that, while the Plaintiff's hours at Public were reduced, that reduction was attributable to her back problems (R. 738), not to her cognitive difficulties, as she now suggests (Doc. 21 at 29).

10

impairments (R.24).[7] The Plaintiff also testified to only one interpersonal issue while working at Publix and denied any additional problems with her performance there. (R. 35-37). In fact, when asked by the ALJ at the June 2017 hearing, the Plaintiff stated that she retained the ability to perform such work. (R. 25).[8]

As to the Plaintiff's ability to live independently with limited assistance, the records upon which the ALJ relied included a function report the Plaintiff's mother completed in June 2015 as well as the Plaintiff's hearing testimony. (R. 247). Although the mother reported the Plaintiff needed encouragement and prompting to engage in most activities of daily living (R. 387-94), the Plaintiff testified at the hearing that, with the exception of requiring reminders to take her medications, she was able to function well and contribute in the home (R. 30-40). The Plaintiff testified, for example, that she helped keep the home organized, did laundry at times subject to her physical limitations, helped her father with his medication, fed the family pets, and needed no prompts to attend to her personal care. *Id.* This testimony is consistent with earlier reports of treating and examining sources that the Plaintiff is quite capable of completing chores when she so chooses (R. 628), can independently perform almost all activities of daily living (R. 638-39), and is able to cook, clean, do laundry, shop, shower, bathe, dress herself, play sports, and socialize with friends (R. 698).

---

[7] This change in employment was due to the Plaintiff's desire for a new job at Walmart with better pay and more hours. (R. 24).

[8] It bears noting that the Plaintiff's subsequent employment with Walmart ended not because of her mental impairments, but because her employer believed she had not been entirely forthcoming on her job application. (R. 24-25).

While the Plaintiff contends that her ability to live independently with limited support does not significantly bear on her ability to work (Doc. 21 at 27-28), the Regulations counsel otherwise. 20 C.F.R. § 416.929(c)(3)(i) (listing daily activities as a factor relevant to an evaluation of a claimant's symptoms); *see also Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012) (citing 20 C.F.R. § 404.1529) (providing that ALJ is allowed to consider a claimant's daily activities when determining whether her testimony regarding her symptoms finds adequate support in the record).

The ALJ's discounting of Dr. Hoch's opinions because the Plaintiff exhibited stability with consistent mental health treatment also finds sufficient support in the record. (R. 247). This evidence includes records of the Plaintiff's mental health treatment with Sweetser, which generally show the Plaintiff's sustained improvement from the time of Dr. Hoch's examination in January 2014 until the end of the Plaintiff's treatment with Sweetser in June 2014. (R. 501-09). By that point, the Plaintiff reported that, although she experienced conflict with her foster sister, her ADHD and PTSD symptoms had decreased, she was doing well and enjoying work, she had developed a better relationship with her foster mother, and she was doing chores more regularly. (R. 501).

The Plaintiff's evaluation and progress notes from Woodfords similarly reveal that, around this time, both the Plaintiff and her foster mother reported considerable improvement in the Plaintiff's mental health. (R. 589-95). In June 2014, for instance,

the Plaintiff generally denied any significant mental health symptoms, and her mother reported a "dramatic" change in the Plaintiff over the past year. (R. 590-91).

Notes of the Plaintiff's medication management with SalusCare from 2014 to 2016 likewise support the ALJ's finding that the Plaintiff generally stabilized with regular mental health treatment following Dr. Hoch's January 2014 examination.[9]

The Plaintiff's effort to bolster Dr. Hoch's opinion by pointing to other evidence in the record (Doc. 21 at 28-29) is misplaced. The fact that other record evidence may cohere with Dr. Hoch's conclusions provides no basis for this Court to overturn the ALJ's decision to give Dr. Hoch's opinion little weight. It is, after all, not the function of the Court to re-weigh the evidence upon review. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Instead, the Court must analyze whether the ALJ relied on substantial evidence and applied the proper legal standards. *Id.* After conducting its review, the Court finds that the ALJ has done just that. Because the ALJ properly considered Dr. Hoch's opinion together with the other relevant evidence of record, the

---

[9] *See, e.g.,* (R. 485-493) (April 2014 note that Plaintiff's longstanding issues with inattention, distraction, and disorganization were greatly improved with medication); (R. 692) (February 2015 note that Plaintiff had no complaints and her father reported behavioral improvements); (R. 710-21) (July 2015 note that, although she reported increased symptoms, Plaintiff was stable with her medications); (R. 708) (August 2015 note that Plaintiff's symptoms had improved with medication change); (R. 731) (December 2015 note regarding Plaintiff's continued improvement with medication, such that her depression did not interfere with her ability to function); (R. 738) (February 2016 note that Plaintiff reported being stable and experiencing only moderate symptoms); (R. 755) (July 2016 note documenting Plaintiff's sleep troubles but noting that her mood and depression were controlled); (R. 759) (November 2016 note that Plaintiff was working and generally doing well).

Plaintiff's challenge to the ALJ's assessment of this one-time examiner's opinion is without merit.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

DONE and ORDERED in Tampa, Florida, this 24th day of September 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record